UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| DIW BOL KIIR,<br><br>                    Petitioner,<br><br>     vs.<br><br>SOUTH DAKOTA STATE<br>PENITENTIARY, THE ATTORNEY<br>GENERAL OF THE STATE OF<br>SOUTH DAKOTA,<br><br>                    Respondents. | 4:21-CV-04009-KES<br><br><br>REPORT AND RECOMMENDATION |

## INTRODUCTION

Pursuant to 28 U.S.C. § 2254, pending before the court is the *pro se* habeas petition of Diw Bol Kiir, an inmate in the custody of the state of South Dakota.  See Docket No. 1.  Respondents have now filed a motion to dismiss Mr. Kiir's petition without holding an evidentiary hearing.  See Docket No. 10.  Mr. Kiir has filed a motion to quash the respondent's motion.  See Docket No. 15.  These matters were referred to this magistrate judge for a recommended disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and the October 16, 2014, standing order of the Honorable Karen E. Schreier, district judge.

## FACTS

### A.    Offense Facts and Charges Asserted

On May 15, 2015, some citizens made a report to police that a man had threatened them with a firearm and then left in a vehicle.  Sioux Falls Police Officer Chase Vanderhule responded to the call and located Mr. Kiir, who

matched the description given by the citizens, behind an apartment building. Officer Vanderhule approached Mr. Kiir and asked him some questions, including whether the officer could pat Mr. Kiir down to make sure he did not have any weapons on him.

A tussle ensued during which Mr. Kiir repeatedly made attempts to grab at the waistband of his pants. Officer Vanderhule eventually had to tase Mr. Kiir repeatedly, after which the officer was eventually able to handcuff Mr. Kiir and arrest him. A firearm matching the description given by the citizens was located on the ground in the area where Mr. Kiir had fought with Officer Vanderhule. The vehicle Mr. Kiir had been driving contained a backpack. Inside the backpack were a bus ticket with Mr. Kiir's name on it and two jeweler's bags and a scale with methamphetamine residue.

Mr. Kiir was eventually indicted on the following charges:

Count 1—aggravated assault on a law enforcement officer

Count 2—simple assault on a law enforcement officer

Count 3—simple assault on a law enforcement officer

Count 4—simple assault on a law enforcement officer

Count 5—possession of a controlled substance

Count 6—committing a felony with a firearm

Count 7—committing simple assault on police with a firearm

Count 8—possession of a firearm with an altered serial number

Count 9—possession of a firearm by a convicted drug offender

Count 10—grand theft (the firearm in question was stolen)

Count 11—resisting arrest

<u>See</u> <u>State v. Kiir</u>, CR 15-3221 at p. 24 (2d Jud. Cir. 2015).

## B.    **Trial and Sentencing**

Mr. Kiir availed himself of his right to a jury trial and was convicted on October 7, 2015, of counts 2, 3, 5, 6, 7, 8, 9, and 10. <u>Id.</u> at pp. 131-33. He was acquitted of counts 1 and 4. <u>Id.</u> The State dismissed count 11 prior to trial. <u>Id.</u> at 313.

Mr. Kiir was sentenced on December 11, 2015. <u>Id.</u> at pp. 166-68. The court imposed a sentence of two years for Count 2, no sentence as to Count 3, four years for Count 5, ten years for Count 6, no sentence as to Count 7, three years for Count 8, four years for Count 9, and three years for Count 10. <u>Id.</u> at p. 167. The sentences imposed for Counts 2, 5, 8, 9 & 10 were to run concurrently. <u>Id.</u> The sentence imposed for Count 6 was to run consecutive to the other sentences. <u>Id.</u> As to Count 6, Mr. Kiir was given credit for 209 days served presentence and the court also suspended three years of the ten-year sentence on the condition that Mr. Kiir pay his fines and attorneys fees. <u>Id.</u>

At the sentencing hearing, counsel informed the court it need only impose a sentence for either Count 6 or Count 7, but not both. <u>Id.</u> at pp. 511-12 (pp. 2-3 of the Dec. 11, 2015, motions hearing transcript). Counsel informed the court it did not make any difference which count the court chose to sentence on. <u>Id.</u> The court indicated it would sentence on Count 6. <u>Id.</u>

**C.    Direct Appeal to the South Dakota Supreme Court**

Mr. Kiir filed a direct appeal.  <u>State v. Kiir</u>, 900 N.W.2d 290 (S.D. 2017).

Mr. Kiir asserted the court violated his confrontation clause rights by admitting

*res gestae* evidence at trial (hearsay statements of the reporting witnesses) and

challenged the sufficiency of the evidence as to three of the offenses of

conviction (possession of a controlled substance while armed, simple assault

on police while armed, and possession of a controlled substance).  <u>Id.</u> at 292,

295.  Indirectly, Mr. Kiir also attempted to raise an argument that counsel was

constitutionally ineffective for failing to move for a judgment of acquittal on

Count 6 at the close of the prosecution's case.  <u>Id.</u> at 297.

The court, in an opinion issued August 2, 2017, affirmed on the *res

gestae* issue.  <u>Id.</u> at 296.  As to Count 6, the court agreed with Mr. Kiir that the

evidence did not support a conviction on that charge because there was no

evidence that Mr. Kiir possessed the firearm while simultaneously possessing

the methamphetamine found in a backpack in a vehicle in a parking lot some

distance away from where the tussel occurred with the police officer.  <u>Id.</u> at

297.  The court declined to entertain Mr. Kiir's ineffective assistance of counsel

argument in connection with Count 6.  <u>Id.</u> at 297-98.  The court determined

the error with regard to Count 6 was harmless because the evidence was

sufficient to support Mr. Kiir's conviction on Count 7 and the trial court

imposed only a single sentence for Counts 6 and 7.  <u>Id.</u> at 298-99.

Justice Kern dissented as to the court's holding regarding Counts 6 and

7.  <u>Id.</u> at 299-301 (Kern, J., concurring in part and dissenting in part).  Justice

Kern believed it was not clear on the record that Mr. Kiir was not prejudiced by the error because it was unclear what effect the erroneous Count 6 conviction may have had on the trial court's sentencing decision.  Id.  Justice Kern would have reversed and remanded for a vacation of the Count 6 conviction and resentencing on Count 7.  Id.

**D.    State Habeas Proceedings**

On December 29, 2017, Mr. Kiir filed a petition for habeas relief in state court.  Kiir v. Young, Civ. 18-163 pp. 1-9 (2d Jud. Cir.) (filed Jan. 3, 2018).  In his petition he raised the following claims:

1. ineffective assistance of counsel for failing to seek an instruction on a lesser included offense—resisting arrest as a lesser included offense of simple assault on a law enforcement officer.

2. ineffective assistance of counsel for failing to challenge the defective indictment and moving to dismiss Counts 6 and 7 for which all the essential elements were not recited.

3. ineffective assistance of counsel for failing to object to the proposed jury instructions and to request a more appropriate instruction that would define the term "armed" as used in SDCL § 22-14-12 relative to Count 1.

4. ineffective assistance of counsel for failing to move for a judgment of acquittal as to Count 6 at the close of the state's evidence.

5. ineffective assistance of counsel for failing to move the court *in limine* to exclude video evidence.

6. ineffective assistance of appellate counsel for failing to raise all of the above allegations 1-5 in the appeal.

7. ineffective assistance of appellate counsel for failing to argue on appeal trial counsel's failure to move to sever Count 9.

Id.  Counsel was appointed to represent Mr. Kiir on this habeas petition.  Id. at

pp. 12-13.  Counsel amended Mr. Kiir's petition.  Id. at pp. 35-41.  In the

amended petition Mr. Kiir raised the following claims:

A.     Ineffective assistance of trial counsel:

1.     failing to timely move to sever Count 9

2.     failing to object to "community safety" testimony from police

3.     failing to object to evidence of uncharged aggravated assault

4.     failing to object to police testimony Mr. Kiir expressed no surprise when informed he was being charged with a weapons offense

5.     failing to move for a judgment of acquittal on all counts at the close of the prosecution's evidence

6.     failing to move for a mistrial when evidence of Mr. Kiir's prior drug offense was introduced

7.     failing to object to introduction of the judgment evidencing Mr. Kiir's prior drug conviction

8.     failing to object to testimony of field test of drugs found in backpack

9.     failing to object to jury instructions regarding Mr. Kiir's prior felony

10.    failing to object to "community safety" arguments in the prosecution's closing argument

11.    failing to object to prosecution's statement in closing argument about Mr. Kiir's lack of surprise when told he was being charged with a weapons offense.

B.     Mr. Kiir's sentence constituted cruel and unusual punishment.

C.     Mr. Kiir's admission to the part II information charging him with being an habitual offender was constitutionally unsound.

D.     Different judges handled Mr. Kiir's jury trial and his sentencing,

6

and Mr. Kiir did not consent to different judges handling different parts of his case.

Id.

Both parties moved for summary judgment in their favor and the state habeas court resolved those motions in favor of respondent in a 41-page opinion filed July 8, 2020. Id. at pp. 352-92. Thereafter, Mr. Kiir moved the state habeas court for the issuance of a certificate of probable cause in a motion dated July 24, 2020, and filed on August 4, 2020. Id. at pp. 394-407. The state habeas court denied the motion August 4, 2020. Id. at p. 408. Mr. Kiir then moved the South Dakota Supreme Court for the issuance of a certificate of probable cause on August 18, 2020 (dated August 17, 2020), which was denied on December 18, 2020. See Kiir v. Young, #29388 at pp. 1-19, 33 (S.D.).

**E.    Mr. Kiir's § 2254 Petition**

Mr. Kiir timely filed his instant § 2254 petition with this court on January 19, 2021.[1] See Docket No. 1. Mr. Kiir raises the following claims in this court:

---

[1] Respondents assert Mr. Kiir's federal petition is timely and the court agrees. His one-year statute of limitations on the federal petition began to run December 4, 2017, when the United States Supreme Court denied his petition for a writ of certiorari on his direct appeal. Kiir v. South Dakota, ___ U.S. ___, 138 S. Ct. 521 (2017). It was tolled from December 29, 2017, when Mr. Kiir filed his state habeas petition until the South Dakota Supreme Court denied Mr. Kiir's motion for a certificate of probable cause on that petition on December 18, 2020. Mr. Kiir filed his instant petition with this court on January 19, 2021. Therefore, only 57 days of the one-year statute of limitations ran before Mr. Kiir filed. See 28 U.S.C. § 2244(d)(1) and (2).

1.    Due Process sufficiency of the evidence—the evidence was insufficient to sustain Mr. Kiir's conviction on Count 7.

2.    Ineffective assistance of counsel (four separate allegations).

3.    Confrontation clause violation—the state violated Mr. Kiir's rights to confront his accusers when evidence of the witnesses' statements were introduced at trial without calling the witnesses themselves to testify.

## DISCUSSION

### A.    Rule 12(b)(6) Standard

Respondents' motion to dismiss is based on Federal Rule of Civil Procedure 12(b)(6), which allows dismissal if the petitioner has failed to state a claim upon which relief can be granted.  Petitioners must plead "enough facts to state a claim to relief that is *plausible* on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) (emphasis added).

Under Federal Rule of Civil Procedure 8(a)(2), a petitioner must plead only "a short and plain statement of the claim showing that the pleader is entitled to relief."  Id. at 554-55 (quoting FED. R. CIV. P. 8(a)(2)).  A petition does not need "detailed factual allegations" to survive a motion to dismiss, but a petitioner must provide the grounds for his entitlement to relief and cannot merely recite the elements of his cause of action.  Id. at 555 (citing Conley v. Gibson, 355 U.S. 41, 47 (1957); Sanjuan v. Am. Bd. of Psychiatry and Neurology, Inc., 40 F.3d 247, 251 (7th Cir. 1994); Papasan v. Allain, 478 U.S. 265, 286 (1986)).  There is also a "plausibility standard" which "requires a complaint with enough factual matter (taken as true)" to support the conclusion that the petitioner has a valid claim.  Id. at 556.  The petitioner's

8

complaint must contain sufficiently specific factual allegations in order to cross the line between "possibility" and "plausibility" of entitlement to relief.  Id.

There are two "working principles" that apply to Rule 12(b)(6) motions. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  First, courts are not required to accept as true legal conclusions "couched as . . . factual allegation[s]" contained in a complaint.  Id. (citing Twombly, 550 U.S. at 555).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id. (quoting Twombly, 550 U.S. at 555).  Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions."  Iqbal, 556 U.S. at 678-79.

Second, the plausibility standard is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."  Id. at 679 (quoting decision below, Iqbal v. Hasty, 490 F.3d 143, 157-158 (2d Cir. 2007)).  Where the petitioner's allegations are merely conclusory, the court may not infer more than the mere possibility of misconduct, and the petition has alleged "but it has not 'show[n]' " that he is entitled to relief as required by Rule 8(a)(2).  Iqbal, 556 U.S. at 679 (emphasis added).

The Court explained that a reviewing court should begin by identifying statements in the complaint that are conclusory and therefore not entitled to the presumption of truth.  Id. at 679-80.  Legal conclusions must be supported by factual allegations demonstrating the grounds for a petitioner's entitlement to relief.  Id. at 679; Twombly, 550 U.S. at 555; Fed. R. Civ. P. 8(a)(2).  A court should assume the truth only of "well-pleaded factual allegations," and then

may proceed to determine whether the allegations "plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

Although a Rule 12(b)(6) motion challenges the sufficiency of a petitioner's pleading, courts evaluating a Rule 12(b)(6) motion are not strictly limited to evaluating only the petition. Dittmer Props., L.P. v. F.D.I.C., 708 F.3d 1011, 1021 (8th Cir. 2013). They may consider "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned." Id. (quoting Miller v. Redwood Toxicology Lab., Inc., 688 F.3d 928, 931 n.3 (8th Cir. 2012) (quoting 5B Charles A. Wright & Arthur R. Miller, Fed. Practice & Procedure § 1357 (3d ed. 2004))). In a habeas action, it is appropriate for the court to take judicial notice of the settled record in the underlying criminal proceedings when evaluating a motion to dismiss. See Hood v. United States, 152 F.2d 431 (8th Cir. 1946) (federal district court may take judicial notice of proceedings from another federal district court); Matter of Phillips, 593 F.2d 356 (8th Cir. 1979) (proper for federal court to take judicial notice of state court pleadings); Green v. White, 616 F.2d 1054 (8th Cir. 1980) (court of appeals may take judicial notice of district court filings). This court has taken judicial notice of Mr. Kiir's criminal circuit court file, his direct appeal file, and his state habeas files at the circuit and supreme court levels. These are the principles guiding the court's evaluation of respondents' motion.

### B.      Principles Applicable to § 2254 Petitions

A state prisoner who believes he is incarcerated in violation of the Constitution or laws of the United States may file a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  The Anti-Terrorism and Effective Death Penalty Act (AEDPA) constrains federal courts to exercise only a "limited and deferential review of underlying state court decisions."  Osborne v. Purkett, 411 F.3d 911, 914 (8th Cir. 2005).  A federal court may not grant a writ of habeas corpus unless the state court's adjudication of a claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law."  28 U.S.C. § 2254(d)(1).  A state court decision is "contrary to" clearly established federal law if it "applies a rule that contradicts the governing law set forth in [Supreme Court] cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of th[e] Court and nevertheless arrives at a result different from [the Court's] precedent."  Williams v. Taylor, 529 U.S. 362, 405-06, (2000).  A federal habeas court may not issue the writ merely because it concludes the state court applied the clearly established federal law erroneously or incorrectly.  Id. at 411.  "Rather, that application must also be *unreasonable*."  Id. (emphasis added).

The state court's factual findings are presumed to be correct, and a federal habeas court may not disregard the presumption unless specific statutory exceptions are met.  Thatsaphone v. Weber, 137 F.3d 1041, 1045 (8th Cir. 1998); 28 U.S.C. § 2254(e).  A federal habeas court must "more than simply disagree with the state court before rejecting its factual determinations.

Instead, it must conclude that the state court's findings lacked even 'fair support' in the record." Marshall v. Lonberger, 459 U.S. 422, 432 (1983).

## C.    Count One—Sufficiency of the Evidence for Count 7

### 1.    Mr. Kiir Did Not Exhaust this Claim

The claim presented by Mr. Kiir to this court in his § 2254 petition— whether the Due Process Clause of the Fourteenth Amendment was violated by his conviction on Count 7 due to insufficient evidence—was *never* presented to the state courts.  On his direct appeal, Mr. Kiir did not raise the constitutional issue.  Rather, he simply argued *factually* that the evidence was not sufficient to support his conviction on Count 7.  Kiir, 900 N.W.2d at 298.  In his habeas case, he raised only ineffective assistance of counsel claims under the Sixth Amendment.  Neither in his original petition nor in the amended petition filed by counsel did he raise the constitutional issue under the Fourteenth Amendment that he raises herein.  Kiir, Civ. 18-163 at pp. 1-9 & 35-41.

There are a number of procedural rules that apply to an application for habeas relief by a state prisoner under § 2254.  Chief among them is the doctrine of state court exhaustion, which limits federal habeas review of state court convictions as follows:.

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
>
>> (A) the applicant has exhausted the remedies available in the courts of the State; or
>>
>> (B)    (i) there is an absence of available State corrective process; or

> (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.
>
> *        *        *
>
> (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

See 28 U.S.C. § 2254(b) and (c).  The above codifies what was previously a judicial doctrine of exhaustion.

A federal court may not consider a claim for relief in a habeas corpus petition if the petitioner has not exhausted his state remedies.  See 28 U.S.C. § 2254(b).  "[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."  O'Sullivan v. Boerckel, 526 U.S. 838, 842 (1999).  If a ground for relief in the petitioner's claim makes factual or legal arguments that were not present in the petitioner's state claim, then the ground is not exhausted. Kenley v. Armontrout, 937 F.2d 1298, 1302 (8th Cir. 1991).  The exhaustion doctrine protects the state courts' role in enforcing federal law and prevents the disruption of state judicial proceedings.  Rose v. Lundy, 455 U.S. 509, 518 (1982).  The Supreme Court has stated:

> Because "it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation," federal courts apply the doctrine of comity, which "teaches that one court should defer action on causes properly within its jurisdiction until the courts of another sovereignty with concurrent powers, and already cognizant of the litigation, have had an opportunity to pass upon the matter."

Rose, 455 U.S. at 518 (citation omitted), superseded by AEDPA as noted in Rhines v. Weber, 544 U.S. 269, 273 (2005).  The exhaustion rule requires state prisoners to seek complete relief on all claims in state court prior to filing a writ of habeas corpus in federal court.  Federal courts should, therefore, dismiss a petition for a writ of habeas corpus that contains claims that the petitioner did not exhaust at the state level.  See 28 U.S.C. § 2254(b) & (c); Rose, 455 U.S. at 522.  A petitioner's procedurally defaulted claims are barred from federal review unless there is a showing of either cause and prejudice or actual innocence.  Bousley v. United States, 523 U.S. 614, 622 (1998).

A federal court must determine whether the petitioner fairly presented an issue to the state courts in a federal constitutional context.  Satter v. Leapley, 977 F.2d 1259, 1262 (8th Cir. 1992).  "To satisfy exhaustion requirements, a habeas petitioner who has, on direct appeal, raised a claim that is decided on its merits need not raise it again in a state post-conviction proceeding."  Id. (citation omitted).  "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  O'Sullivan, 526 U.S. at 845.  "A claim is considered exhausted when the petitioner has afforded the highest state court a fair opportunity to rule on the factual and theoretical substance of his claim."  Ashker v. Leapley, 5 F.3d 1178, 1179 (8th Cir. 1993) (citation omitted).

Fairly presenting a federal claim requires more than simply going through the state courts:

14

> The rule would serve no purpose if it could be satisfied by raising one claim in the state courts and another in the federal courts. Only if the state courts have had the first opportunity to hear the claim sought to be vindicated in a federal habeas proceeding does it make sense to speak of the exhaustion of state remedies. Accordingly, we have required a state prisoner to present the state courts with the same claim he urges upon the federal courts.

Picard v. Connor, 404 U.S. 270, 276 (1971).

It is also not enough for the petitioner to assert facts necessary to support a federal claim or to assert a similar state-law claim. Ashker, 5 F.3d at 1179. The petitioner must present both the factual and legal premises of the federal claims to the state court. Smittie v. Lockhart, 843 F.2d 295, 297 (8th Cir. 1988) (citing Laws v. Armontrout, 834 F.2d 1401, 1412 (8th Cir. 1987)). "The petitioner must 'refer to a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue.' " Ashker, 5 F.3d at 1179 (quoting Kelly v.Trickey, 844 F.2d 557, 558 (8th Cir. 1988)). This does not, however, require petitioner to cite "book and verse on the federal constitution." Picard, 404 U.S. at 278 (citing Daugharty v. Gladden, 257 F.2d 750, 758 (9th Cir. 1958)). The petitioner must simply make apparent the constitutional substance of the claim. Satter, 977 F.2d at 1262.

Here, at no time, either in his direct appeal or in his state habeas petition, did Mr. Kiir present a Fourteenth Amendment Due Process claim to the state courts regarding sufficiency of the evidence to support Count 7. The issue he raised in his direct appeal was based strictly on state law and the evidence; there was no constitutional dimension to his argument. Kiir, 900

15

N.W.2d at 298.  The issues raised in his two state habeas petitions relative to Count 7 were Sixth Amendment ineffective assistance of counsel claims, not Fourteenth Amendment Due Process claims.  See Kiir, Civ. 18-163 at pp. 1-9 and 35-41.[2]

So, Mr. Kiir never presented his Due Process claim to the state courts and that claim is therefore unexhausted.  Previously, Mr. Kiir filed no fewer than eight (8) prior § 2254 petitions which were summarily dismissed because he had not exhausted his claims before the state courts.[3]  This court patiently explained the above law to Mr. Kiir in each of those dismissals, so this is not a case where Mr. Kiir proceeded through state court ignorant of the requirement of exhaustion.  In addition, he was represented by counsel during his state habeas proceedings.

Now, it would be futile to send Mr. Kiir back to state court to try to present his Due Process claim to the state courts.  The opportunity for doing so now is closed to him.  South Dakota law prohibits the filing of second or successive state habeas petitions unless "[t]he application raises a new rule of constitutional law, made retroactive to cases on

---

[2] Mr. Kiir argued trial counsel was ineffective for failing to move to dismiss Count 7 from the indictment, for failing to object to the jury instructions on Count 7, for failing to know the essential elements of SDCL § 22-14-12, for failing to object to the prosecutor's closing argument about Count 7, and for failing to urge the jury to acquit Mr. Kiir of Count 7.  See Kiir, Civ. 18-163 at pp. 369-78 (state habeas court's discussion of all Mr. Kiir's Count 7 arguments).

[3] See Kiir v. Young, 4:18-cv-04096, 4:19-cv-04056, 4:19-cv-04139, 4:19-cv-04146, 4:20-cv-04052, 4:20-cv-04087, 4:20-cv-04128, 4:20-cv-04167.

collateral review by the United States Supreme Court and the South Dakota Supreme Court, that was previously unavailable" or the subsequent petition involves newly discovered facts which were not previously known and which would be sufficient to establish by clear and convincing evidence that no reasonable fact finder would have found the applicant guilty. See SDCL § 21-27-5.1. Mr. Kiir's Due Process claim does not fall into either of these exceptions. Accordingly, he has procedurally defaulted this claim. Smittie, 843 F.2d at 296.

A § 2254 petitioner can cure a procedural default by demonstrating cause and prejudice. Bousley, 523 U.S. at 622. Because respondents never assert in their motion to dismiss that Mr. Kiir's Due Process claim is unexhausted and defaulted, Mr. Kiir has not addressed whether he can establish cause and prejudice. Simply because the respondents did not raise the exhaustion/procedural default argument does ***not*** mean that they have waived the argument. 28 U.S.C. § 2254(b)(3) (respondents do not waive the exhaustion requirement simply by failing to raise it—waiver can only occur by express waiver through counsel).

**MR. KIIR IS INSTRUCTED AND PUT ON NOTICE THAT HE SHOULD BE PREPARED TO ADDRESS THE CAUSE AND PREJUDICE PRONGS OF PROCEDURAL DEFAULT ANALYSIS IN HIS APPEAL OR OBJECTIONS TO THIS COURT'S OPINION.** In the event the district court on review does not find that Mr. Kiir procedurally defaulted, or in the event he is able to prove

there is cause for his default and prejudice, the court addresses the merits of his Fourteenth Amendment Due Process claim.

### 2.    Applicable Standard for a Due Process Claim

Mr. Kiir raises a claim that his conviction under Count 7 violated the Due Process clause of the Fourteenth Amendment because there was insufficient evidence to support the jury's verdict.  Federal habeas relief for state prisoners is limited to claims asserting a violation of a federal constitutional provision, a federal law, or a federal treaty:

> The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.

See 28 U.S.C. § 2254(a).  The Supreme Court has held that "a state prisoner who alleges that the evidence in support of his state conviction cannot be fairly characterized as sufficient to have led a rational trier of fact to find guilt beyond a reasonable doubt has stated a federal constitutional claim." Jackson v. Virginia, 443 U.S. 307, 321 (1979).

This is because the Constitution requires proof of guilt beyond a reasonable doubt for a criminal conviction.  In re Winship, 397 U.S. 358, 364 (1970).  This requirement stems from the Due Process clauses of the Fifth and Fourteenth Amendments.  Id.  The Due Process clause requires proof beyond a reasonable doubt in support of every essential element of the crime of conviction.  Jackson, 443 U.S. at 313-14.  Thus, in order to satisfy the Due Process clause, the jury has to have been instructed on the beyond-a-

18

reasonable-doubt standard *and* the jury has to have rationally applied that standard to the evidence.  Id. at 317-19.  When a federal court reviews a sufficiency-of-the-evidence claim as to a state court conviction, the appropriate standard to apply is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  Id. at p. 319, 324.

State court findings of fact are presumed correct in federal habeas actions unless the findings are based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  See 28 U.S.C. § 2254(d)(2).  When the record contains evidence with conflicting inferences, the federal court must presume that the jury resolved the evidentiary conflicts in favor of the state even if the record does not affirmatively show the jury did so.  Jackson, 443 U.S. at 326.  The prosecution need not have ruled out every hypothesis except that of the petitioner's guilt beyond a reasonable doubt.  Id.  A state appellate decision regarding sufficiency of the evidence is entitled to deference.  Id. at 323.  See also Lewis v. Jeffers, 497 U.S. 764, 783 (1990) ("[A] federal court should adhere to the Jackson standard even when reviewing the decision of a state appellate court that has independently reviewed the evidence, for the underlying question remains the same.").

A state prisoner asserting a sufficiency-of-the-evidence claim in federal habeas court faces a high bar.  Coleman v. Johnson, 566 U.S. 650, 651 (2012).  This is because it is the primary responsibility of the *jury*, not a court, to decide

"what conclusions should be drawn from evidence admitted at trial." Id.  A reviewing court on direct appeal may only overturn a jury verdict if "no rational trier of fact could have agreed with the jury." Id. (quoting Cavazos v. Smith, 565 U.S. 1, 2 (2011) (*per curiam*)).  Second, when a federal habeas court reviews a state court decision rejecting a sufficiency-of-the-evidence claim, it may not overturn that decision "simply because the federal court disagrees with the state court.  The federal court instead may do so only if the state court decision was 'objectively unreasonable.' " Id. (quoting Cavazos, 565 U.S. at 2). Here there is a third level of deference—not only did the state supreme court reject this claim, but the state habeas court also rejected Mr. Kiir's sufficiency-of-the-evidence claim as to Count 7.

Federal courts look to state law for "the substantive elements of the criminal offense." Id. at 655.  But the question of whether the quantum of evidence adduced at trial is sufficient to satisfy the Due Process Clause is "purely a matter of federal law." Id.

Count 7 of Mr. Kiir's indictment charged a violation of SDCL § 22-14-12, which reads as follows:

> Any person who commits or attempts to commit any felony while armed with a firearm, including a machine gun or short shotgun, is guilty of a Class 2 felony for the first conviction.  A second or subsequent conviction is a Class 1 felony.  The sentence imposed for a first conviction under this section shall carry a minimum sentence of imprisonment in the state penitentiary of five years.  In case of a second or subsequent conviction under this section such person shall be sentenced to a minimum imprisonment of ten years in the penitentiary.

> Any sentence imposed under this section shall be consecutive to any other sentences imposed for a violation of the principal felony.

20

> The court may not place on probation, suspend the execution of sentence, or suspend the imposition of sentence of any person convicted of a violation of this section.

SDCL § 22-14-12.

Under South Dakota law, simple assault against a law enforcement officer is a felony offense.  See SDCL § 22-18-1.05 (providing "[s]imple assault, . . ., if committed against a law enforcement officer, . . ., is a Class 6 felony").  Simple assault can be committed in any one of the following five ways:  (1) by attempting to cause another bodily injury while having the actual ability to cause the injury, (2) recklessly causing bodily injury to another, (3) negligently causing bodily injury to another with a dangerous weapon, (4) attempting by physical menace or credible threat to place another in imminent fear of bodily harm, or (5) intentionally causing bodily injury to another where the injury is not serious.  See SDCL § 22-18-1.  Thus, if one commits a simple assault against a law enforcement officer while one is armed, a violation of SDCL § 22-14-12 occurs.

Both the state supreme court on Mr. Kiir's direct appeal and the state habeas court held that there was sufficient evidence to support Mr. Kiir's conviction on Count 7, which alleged a violation of SDCL § 22-14-12.  The state supreme court was analyzing a factual question:  Was the evidence itself sufficient to support the conviction?  This court reviews a state court's decision as to factual matters to determine if there is fair evidence in the record to support the state court's decision; the state court's factual determinations are presumed correct.  Marshall, 459 U.S. at 432.  If there is fair support in the

record for the factual determinations, this court may not grant habeas relief.  Id.

The state habeas court's decision regarding Count 7 was both factual and legal, so the court must ask (again) if there is fair support for that court's factual determination.  Id.  As to the state habeas court's legal ruling (whether a constitutional deprivation had been shown), this court must ask whether the state court's decision represents an unreasonable application of federal law. Williams, 529 U.S. at 411.

In his direct appeal, Mr. Kiir never disputed that he committed simple assault against Officer Vanderhule.  Kiir, 900 N.W.2d at 298.  Therefore, the only issue before that court was whether the evidence was sufficient to show that Mr. Kiir committed that assault "while armed."  Id.; see also SDCL § 22-14-12.  The court viewed the evidence in the light most favorable to the jury's guilty verdict and held "the evidence at trial supports that Kiir attempted to use a firearm against Officer Vanderhule's efforts to restrain Kiir."  Kiir, 900 N.W.2d at 298.

### 3.    Evidence at Trial on Count 7

The trial evidence regarding Count 7 was as follows.  Just after 8 p.m. while on patrol for the Sioux Falls Police Department Officer Vanderhule was dispatched to the area of 100 E. Third Street in Sioux Falls, South Dakota, on a report of an aggravated assault with a firearm.  State v. Kiir, CR 15-3221 at p. 407 (Vol. I Jury Trial Transript ("JT") p. 100).  When Officer Vanderhule arrived on scene, there were multiple alleged victims who spoke Spanish and a

22

person who spoke both Spanish and English who interpreted the victims' statements for the officer.  Id. at p. 408 (Vol. I JT p. 101).

The victims said a silver, gray or brown Chevy Impala or Malibu arrived on scene and an African-American male exited wearing a white T-shirt and a red hat.  Id. at p. 408-09 (Vol. I JT p. 101-02).  The man pointed a firearm with a black grip and a silver top on it at the victims.  Id.  The victims said he was pointing the gun at them because they refused to buy drugs from another individual.  Id. at p. 408 (Vol. I JT p. 101).  The victims described the man as being 25 to 30 years old.  Id. at p. 409 (Vol. I JT at p. 102).  While Officer Vanderhule was talking to the victims, he received word that the suspect had returned to the vicinity.  Id.

Officer Vanderhule then walked around to the north side of the building in front of which he had been meeting with the victims and encountered Mr. Kiir, who is an African-American and was wearing a white T-shirt and a red hat.  Id. at pp. 410-11 (Vol. I JT at pp. 103-04).  Officer Vanderhule approached Mr. Kiir and asked him his name.  Id. at p. 412 (Vol. I JT at p. 105).  Mr. Kiir initially did not want to give his name, but then said his name was "Curtis."  Id.  Officer Vanderhule asked Mr. Kiir what he was doing there, whether he lived in the building.  Id.  Mr. Kiir responded he was just dropping off beer for a friend.  Id. at pp. 412-13 (Vol. I at pp. 105-06).

Officer Vanderhule then told Mr. Kiir he was investigating an incident that had occurred earlier in that location.  Id. at p. 413 (Vol. I. JT p. 106).  Mr. Kiir denied being present earlier.  Id.  Officer Vanderhule asked Mr. Kiir if

he had any weapons on his person.  Id. at p. 414 (Vol. I JT p. 107).  He denied

having any.  Id.  Officer Vanderhule then informed Mr. Kiir he was going to pat

him down to check to make sure he did not have any weapons.  Id.  Mr. Kiir

immediately discarded the cigarette he had been holding, backed up, clenched

his fists in front of his waist and began bouncing up and down like a boxer in a

ring about to fight someone.  Id. at p. 415 (Vol. I JT at p. 108).  Officer

Vanderhule, who was alone, tried to defuse the situation.  Id.  Mr. Kiir repeated

several times that he was not going to let Officer Vanderhule touch him.  Id. at

pp. 415-16 (Vol. I JT at pp. 108-09).

At this point, Officer Vanderhule removed his taser from his belt and told

Mr. Kiir to get down on the ground.  Id. at p. 416 (Vol. I JT at p. 109).  Mr. Kiir

turned to run and flee.  Id.  Officer Vanderhule deployed his laser into

Mr. Kiir's back and Mr. Kiir fell down onto his stomach.  Id. at p. 417 (Vol. I JT

at p. 110).  Officer Vanderhule told Mr. Kiir to remain on the ground and put

his hands behind his back.  Id.  Mr. Kiir ignored the officer's command and

kept trying to get up.  Id. at p. 418 (Vol. I JT at p. 111).  Officer Vanderhule

tried to handcuff Mr. Kiir, but only succeeded in cuffing Mr. Kiir's left hand.

Id. at p. 419 (Vol. I JT at p. 112).  Mr. Kiir was struggling with the officer to try

to prevent his right hand from being cuffed.  Id.  Mr. Kiir repeatedly tried to

bring his right hand to the front of his body near the waistband area.  Id.

Officer Vanderhule held onto Mr. Kiir's left hand with his own left hand and

Mr. Kiir tried to bite it.  Id. at p. 420 (Vol. I JT at p. 113).

Officer Vanderhule deployed his taser on Mr. Kiir a second time. Id. at p. 421 (Vol. 1 JT at p. 114). Mr. Kiir continued to thrash around, resulting in more tasing. Id. at pp. 421-24 (Vol. I JT at pp. 114-17). Officer Vanderhule continued commanding Mr. Kiir to submit and Mr. Kiir kept actively resisting and reaching toward his waistband. Id. Officer Vanderhule was still alone with Mr. Kiir at this point and described the struggle as "fighting . . . for my life." Id. at p. 425, (Vol. I JT at p. 118).

Officer Vanderhule finally succeeded in getting Mr. Kiir's right hand cuffed at about the same time reinforcements arrived on scene. Id. As Officer Vanderhule tried to assist Mr. Kiir to his feet, Mr. Kiir kept making jerking motions and was trying to put himself back onto the ground, though eventually he cooperated and stood upright. Id. at p. 426 (Vol. I JT at p. 119). The reinforcement officers found a firearm on the ground right underneath where Mr. Kiir and Officer Vanderhule had been struggling. Id. at pp. 426-27 (Vol. I JT at pp. 119-20). The firearm was a black-handled, silver-slided semi-automatic pistol exactly matching the description of the gun given earlier by the victims. Id. at p. 427 (Vol. I JT at p. 120).

### 4.    Analysis Under <u>Jackson</u>

The court must ask "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt?" Jackson, 443 U.S. at 319, 324. The court has no difficulting reaching the conclusion that a rational trier of fact could have found Mr. Kiir violated the elements of SDCL

25

§ 22-14-12 beyond a reasonable doubt.  When Officer Vanderhule told Mr. Kiir what he was investigating, Mr. Kiir immediately became verbally defensive. When Officer Vanderhule moved to pat him down, Mr. Kiir immediately became physically combative.  During the struggle with the officer, Mr. Kiir repeatedly reached for his waistband with his still-free right hand.  He attempted to bite Officer Vanderhule's hand.  Officer Vanderhule believed Mr. Kiir was armed and Mr. Kiir repeatedly attempted to reach his right hand toward his waistband of his pants.

The simple assault statute requires that the defendant have actually struck the victim but not caused serious bodily injury or that the defendant threatened such contact with the apparent ability to carry it out.  SDCL § 22-18-1.  A rational fact finder could definitely find beyond a reasonable doubt that the above evidence satisfies these elements.  Furthermore, Officer Vanderhule was a law enforcement officer, so that fact transforms simple assault into a felony.  SDCL § 22-18-1.05.

The second element of SDCL § 22-14-12 is that Mr. Kiir was armed at the time he committed the simple assault on Officer Vanderhule.  Again, a rational trier of fact could find beyond a reasonable doubt that Mr. Kiir was armed at the time.  The victims described Mr. Kiir and described the handgun he wielded as having a black handgrip and a silver slide on the top.  Mr. Kiir matched the victims' description of the suspect (African-American, 25-30 years old, wearing a white T-Shirt and a red cap).  Mr. Kiir's resistance to Officer Vanderhule began when Officer Vanderhule asked if he had a weapon and announced he

26

was going to pat Mr. Kiir down.  Mr. Kiir repeatedly reached for his waistband during the struggle with the officer.  Mr. Kiir engaged in jerky movements as Officer Vanderhule tried to help him to his feet after he was handcuffed.  This court notes such movement could be designed to dislodge a weapon from one's waistband.  And a gun exactly matching the victims' description was found immediately under the area where Mr. Kiir and Officer Vanderhule had struggled.  The evidence would support a finding that the gun was on Mr. Kiir's person during the struggle.

Mr. Kiir argues that "armed" within the meaning of SDCL § 22-14-12 requires proof that he wielded the firearm in some fashion by pointing it at the officer or threatening the officer with the gun.  Because the evidence at trial did not show that he did this, he argues the evidence was insufficient to support his conviction on Count 7.  South Dakota law does not require that Mr. Kiir have brandished the weapon in order to have been "armed" while committing simple assault against Officer Vanderhule.

The court in Mr. Kiir's direct appeal stated that "armed" means "used in the perpetration of the predicate felony."  Kiir, 900 N.W.2d at 297.

In State v. Cook, 319 N.W.2d 809, 811, 813 (S.D. 1982), the South Dakota Supreme Court invalidated a conviction under SDCL § 22-14-12 under facts facially similar to Mr. Kiir's case:  while trying to make an arrest, officers struggled with a defendant who had a firearm concealed on his person, which firearm was discovered after the struggle had ceased and the defendant was taken into custody.  The Cook court was careful to state that its holding was

27

limited to the "peculiar" facts of that case.  Id. at 813.  Four additional facts present in Cook serve to distinguish it from the facts of Mr. Kiir's case:  the defendant had a lawful permit to carry a concealed weapon, the officers had no knowledge or reason to suspect that the defendant was armed during the struggle, the defendant made no efforts to access his handgun during the struggle, and the defendant testified he had used the weapon for a lawful purpose (target practice) earlier that day.  Id. at 811, 813.

    None of the extenuating facts from Cook are present in Mr. Kiir's case.  There was no evidence he had a lawful permit to carry a concealed weapon.  There was no evidence he had previously used the weapon for a lawful purpose earlier that day.  Here, Officer Vanderhule was nearly certain Mr. Kiir *was* armed—Mr. Kiir matched the description of the suspect given by the victims, Officer Vanderhule encountered Mr. Kiir only a few minutes after the incident with the victims thus leading to the inference he might still have the weapon in his possession, and Mr. Kiir's reactions to Officer Vanderhule's inquiry about having weapons was indicative of the fact he probably had a weapon.  Finally, and most importantly, the evidence was that Mr. Kiir repeatedly reached for his weapon during his struggle with Officer Vanderhule.  No doubt these facts are what informed Officer Vanderhule's feeling at the time he was in a fight for his life.  The facts in Mr. Kiir's case support the South Dakota Supreme Court's definition of "armed" under SDCL § 22-14-12.

    In connection with Mr. Kiir's argument that he was not "armed" within the meaning of the statute, this court notes that the South Dakota Supreme

Court has held that SDCL § 22-14-12 is akin to the federal statute, 18 U.S.C. § 924(c).[4]  State v. Simons, 313 N.W.2d 465, 466 n.1, 467 (S.D. 1981).  The federal cases arising under § 924(c) demonstrate that mere simultaneous possession of a firearm at the same time one commits a crime of violence or a drug offense is not sufficient to satisfy the statute, but facts and inferences from those facts that demonstrate a nexus between possession of a firearm and a predicate crime will repel a sufficiency-of-the-evidence challenge.  See, e.g., United States v. Urbina-Rodriguez, 986 F.3d 1095, 1098 (8th Cir. 2021).

In Urbina-Rodriguez, the defendant was convicted of a violation of § 924(c) when officers arrested him sitting in a lawn chair in his front yard with a package containing drugs worth $43,000 sitting on a nearby chair and a loaded rifle leaning next to the defendant against a tree.  Id. at 1097-98.  The defendant argued he owned a lot of chickens and was plagued by varmits and had the rifle nearby to protect his chickens—the presence of both the drugs and the loaded rifle at the same location as the defendant was mere happenstance according to him.  Id.

The Eighth Circuit rejected this argument.  Id. at 1098.  They noted facts which supported the inference that the gun was being used in furtherance of drug trafficking instead of protecting chickens:  the value of the drugs, the proximity of the gun, the fact the defendant anticipated immediate interactions

---

[4] While the state statute criminalizes being armed with a firearm during the commission of a felony, the federal statute criminalizes use or carrying of a firearm during the commission of a crime of violence or a drug trafficking crime.  Compare SDCL § 22-14-12 with 18 U.S.C. § 924(c)(1)(A).

with other drug traffickers (i.e. he anticipated potential danger), the defendant had prior drug convictions (showing familiarity with drug trafficking), and the defendant giving a false name in order to take delivery of the package containing the drugs.  Id.  The court held the evidence was sufficient to sustain the defendant's § 924(c) conviction.  Id.  So too here.  The evidence did not show mere simultaneous possession of a gun at the time Mr. Kiir committed a felony, but a nexus between the felony and the possession of the weapon.

The next inquiry Jackson requires the court to explore is whether the jury in Mr. Kiir's case was instructed that they must find the predicate facts in support of the crime charged beyond a reasonable doubt.  Jackson, 443 U.S. at 317-19.  Here, the jury was properly instructed that they must find every element of the crime charged beyond a reasonable doubt before convicting Mr. Kiir.  State v. Kiir, CR 15-3221 at pp. 90, 124 (Instructions 4 & 38).  The court also properly explained to the jury what proof beyond a reasonable doubt meant and required.  Id. at p. 91 (Instruction 5).  Finally the jury was instructed that its verdict must be unanimous.  Id. at p. 126 (Instruction 40).  The court finds and concludes that the jury in Mr. Kiir's trial was properly instructed on its duty to find each essential element of the crime charged in Count 7 beyond a reasonable doubt and to do so unanimously.  Thus, both the state supreme court and the state habeas court's conclusion that Mr. Kiir's conviction under Count 7 was supported by sufficient evidence passes muster under § 2254.

The final inquiry the court must make is whether the state courts unreasonably applied federal law to resolve Mr. Kiir's Due Process claim regarding sufficiency of the evidence in support of Count 7. The court is unable to address this prong because, as explained above, Mr. Kiir *never presented a Due Process claim* in state court. Therefore, both the state supreme court's decision and the state habeas court's decision are bereft of any Fourteenth Amendment analysis. See <u>Kiir</u>, 900 N.W.2d at 290-299; <u>Kiir</u>, 49 Civ. 18-163 at pp. 350-92. Because the factual decisions made by the state courts enjoy fair support in the record, because this court's analysis under <u>Jackson</u> demonstrates Mr. Kiir's Due Process rights were not violated with regard to Count 7, and because Mr. Kiir procedurally defaulted this claim, this court recommends granting respondents' motion to dismiss ground one alleged in Mr. Kiir's § 2254 petition. Such dismissal, whether on the merits or on the grounds of procedural default, should be a dismissal *with* prejudice.

## D.    Ineffective Assistance As To Count 7

Mr. Kiir's second claim in his § 2254 petition was that trial counsel was ineffective for failing to object to Count 7 of the indictment as vague, ambiguous and fatally defective because it used the language of SDCL § 22-14-12 to describe the crime Mr. Kiir was charged with. See Docket No. 1 at p. 14. Mr. Kiir argues the indictment did not inform him of the elements of the crime. <u>Id.</u>

Mr. Kiir goes on to argue counsel was ineffective for failing to object to the jury instruction with regard to Count 7. <u>Id.</u> at p. 19. And that trial counsel

was ineffective in failing to object to the prosecutor's closing argument regarding Count 7.  Id. at p. 21.  Finally, that trial counsel was ineffective in failing "to make a closing argument on count 6 and 7, and fail[ing] to have knowledge of the essential elements of count 6 and 7."  Id. at p. 25.  These claims *were* raised in Mr. Kiir's original state habeas petition, but they were not asserted in the amended petition filed by counsel.  Compare Kiir, Civ. 18-163 at pp. 1-9 with pp. 35-41.  Nevertheless the state habeas court addressed the claims (id. at pp. 369-78), so this court views the claims to have been properly exhausted and reaches the merits.

### 1.    **Strickland Standard**

The Sixth Amendment of the Constitution of the United States affords a criminal defendant with the right to assistance of counsel.  U.S. Const. amend. VI.  The Supreme Court "has recognized that 'the right to counsel is the right to the effective assistance of counsel.' "  Strickland v. Washington, 466 U.S. 668, 698 (1984) (quoting McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970)).  Strickland is the benchmark case for determining if counsel's assistance was so defective as to violate a criminal defendant's Sixth Amendment rights and require reversal of a conviction.  Id. at 687.  "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness."  Id. at 687-88.  The defendant must also show that counsel's unreasonable errors or deficiencies prejudiced the defense and affected the judgment.  Id. at 691.  The defendant must show "there is a reasonable

probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. at 695.  In sum, a defendant must satisfy the following two-prong test.  Id. at 687.

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

Id.

"There is a presumption that any challenged action was sound trial strategy and that counsel rendered adequate assistance and made all significant decisions in the exercise of professional judgment." Hall v. Luebbers, 296 F.3d 685, 692 (8th Cir. 2002) (quotation omitted).  It is the petitioner's burden to overcome this presumption, and a "petitioner cannot build a showing of prejudice on a series of errors, none of which would by itself meet the prejudice test." Id.  Counsel's conduct must be judged by the standards for legal representation which existed at the time of the representation, not by standards promulgated after the representation. Bobby v. Van Hook, 558 U.S. 4, 7-9 (2009).  American Bar Association standards and similar directives to lawyers are only guides as to what reasonableness of counsel's conduct is, they are not its definitive definition. Id.

The Supreme Court distinguishes between those cases in which the new evidence "would barely have altered the sentencing profile presented to the sentencing judge," and those that would have had a reasonable probability of changing the result. Porter v. McCollum, 558 U.S. 30, 41 (2009). In assessing the prejudice prong, it is important for courts to consider "the totality of the available mitigation evidence—both that adduced at trial, and the evidence adduced in the habeas proceeding—and reweigh it against the evidence in aggravation." Id. at 40-41 (internal quotation omitted, cleaned up). It is not necessary for the petitioner to show "that counsel's deficient conduct more likely than not altered the outcome" of his case, only that there is "a probability sufficient to undermine confidence in [that] outcome." Id. at 44 (quoting Strickland, 466 U.S. at 693-94).

Finally, "[i]neffectiveness of counsel is a mixed question of law and fact and thus on habeas review a federal court is not bound by a state court's conclusion that counsel was effective." Whitehead v. Dormire, 340 F.3d 532, 537 (8th Cir. 2003). "However, 'state court findings of fact made in the course of deciding an ineffectiveness claim are subject to the deference requirement of § 2254(d).' " Id. (citing Strickland, 466 U.S. at 698). That is, "[a] state court's findings of fact are entitled to a presumption of correctness." Miller v. Dormire, 310 F.3d 600, 603 (8th Cir. 2002). Additionally, judicial scrutiny of attorney performance is highly deferential, with a strong presumption that counsel's conduct falls within the range of reasonable professional conduct. Strickland, 466 U.S. at 698.

Where a claim of ineffective assistance of counsel is made in a § 2254 petition, the already deferential standard of review of counsel's conduct is paired with the extremely deferential standard of review applicable to federal court review of a state court's rejection of a habeas claim to make the federal court's "highly deferential" review "doubly" so. Harrington v. Richter, 562 U.S. 86, 105 (2011). "Federal habeas courts must guard against the danger of equating unreasonableness under Strickland with unreasonableness under § 2254(d)." Id. The inquiry when a Strickland claim is raised in a § 2254 petition is "whether there is any reasonable argument that counsel satisfied Strickland's deferential standard." Id.

### 2. Counsel's Failure to Object to Counts 6 & 7 of the Indictment

The indictment in Mr. Kiir's case stated the following regarding Count 7:

> COUNT 7
> That the Defendant, DIW BOL KIIR, in Minnehaha County, State of South Dakota, on or about the 15th day of May, 2015, then and there did commit or attempts [sic] to commit the crime of SIMPLE ASSAULT ON LAW ENFORCEMENT, when armed with a firearm, , [sic] which conduct is in violation of SDCL 22-14-12, contrary to the form of the statute in such case made and provided and against the peace and dignity of the State of South Dakota.

State v. Kiir, CR 15-3221 at p. 26.

The state habeas court correctly recited the federal law applicable to a Sixth Amendment ineffective assistance of counsel claim. Kiir, Civ. 18-163 at p. 368. The state habeas court concluded Count 7 of the indictment was not objectionable. Id. at p. 370. Applying South Dakota law, the court wrote that all that is required is that the indictment "employ[ ] the language of the statute

and enable[ ] a person of 'common understanding to know what is intended.' "
Id. (citing State v. Schrempp, 887 N.W.2d 744, 748 (S.D. 2016)).

The court held Count 7 of the indictment satisfied this standard, so counsel's performance was not deficient in failing to object to the indictment. Id.  The court rejected Mr. Kiir's assertion that the indictment should have explained that "armed" means "used in the perpetration of the predicate felony."  Id.  The court wrote that there was no law requiring judicial discussions concerning the implication of statutory terms to be inserted in indictments.  Id.  The court held that Mr. Kiir's trial counsel "did not err, much less commit a constitutionally significant error, by making no objection to the indictment."  Id.

In his argument in support of his claim, Mr. Kiir himself concedes that a common understanding of the word "armed" is "furnished with [a] weapon" or "using or involving a weapon."  See Docket No. 1 at p. 18.  The common understanding is in accord with the legal definition set forth by the state supreme court.  This court agrees there was nothing objectionable about the state court indictment as to Count 7.  The state habeas court's decision is neither an unreasonable application of federal law nor an unreasonable determination of the facts in light of the evidence presented.  28 U.S.C. § 2254(d)(1) & (2).

As to counsel's failure to object to Count 6, the court finds Mr. Kiir cannot establish Strickland prejudice because the South Dakota Supreme Court agreed with him on direct appeal regarding this count.  This court

recommends respondents' motion to dismiss this portion of Mr. Kiir's

ineffective assistance claim be granted.

### 3.    Counsel's Failure to Object to Counts 6 & 7 Jury Instructions

The state trial court gave the following instructions as to Counts 6 & 7:

Instruction No.  19
Any person who commits or attempts to commit any felony while
armed with a firearm is guilty of a crime.

Instruction No.  20
The elements of the crime of Committing or Attempting to Commit
a Felony with a Firearm, as charged in Count 6 of the Indictment,
each of which the state must prove beyond a reasonable doubt, are
that at the time and place alleged:

    1.    Diw Kiir committed or attempted to commit a felony,
        Possession of a Controlled Substance.

    2.    Diw Kiir did so while armed with a firearm.

Instruction No.  21
The elements of the crime of Committing or Attempting to Commit
a Felony with a Firearm, as charged in Count 7 of the Indictment,
each of which the state must prove beyond a reasonable doubt, are
that at the time and place alleged:

    1.    Diw Kiir committed or attempted to commit a felony,
        Simple Assault on Law Enforcement.

    2.    Diw Kiir did so while armed with a firearm.

State v. Kiir, CR 15-3221 at pp. 105-07 (Instructions 19-21).

Mr. Kiir agues the jury instructions were defective and counsel should

have objected to them because they did not define the word "armed," but

merely used the statutory language.  Docket No. 1 at p. 19.  The state habeas

court rejected this argument as to Count 7 because the instructions given were

identical with instructions the South Dakota Supreme Court had previously

approved. <u>Kiir</u>, Civ. 18-163 at p. 371 (citing <u>State v. McGarrett</u>, 535 N.W.2d 765, 769 n* (S.D. 1995)).  Because the jury instructions used in Mr. Kiir's trial as to Count 7 were not objectionable, the state habeas court concluded counsel had not rendered deficient performance in not objecting to it.  <u>Id.</u> at pp. 371-72.  Again, the state court correctly recited and applied the <u>Strickland</u> standard.

As to Count 6, the court concludes Mr. Kiir cannot show prejudice.  The South Dakota Supreme Court held the evidence did not support his conviction as to Count 6 in his direct appeal, so any failure to object to jury instructions at the trial level was harmless and did not prejudice Mr. Kiir.  <u>Kiir</u>, 900 N.W.2d at 297-98.

Mr. Kiir argues that the jury instructions given at his trial allowed the jury to convict him for merely possessing a firearm at the same time he was committing a felony (because they did not define "armed"), which is impermissible under the <u>Cook</u> decision discussed *supra*.  This court rejects that argument here for the same reasons the argument was rejected in Mr. Kiir's Ground One sufficiency-of-the-evidence claim:  namely, that the evidence in his case showed a nexus between possession of the firearm and the felony he committed.  Thus, even if the instruction was in error (it was not), Mr. Kiir cannot show prejudice because the evidence was sufficient to permissibly convict him of SDCL 22-14-12 under the law.

This court recommends respondent's motion to dismiss the jury instruction portion of Mr. Kiir's ineffective assistance claim on Ground Two of

his federal habeas petition be granted.  The state court's decision was neither an unreasonable application of federal law nor an unreasonable determination of the facts based on evidence in the record.

### 4. Counsel's Failure to Object to the Prosecutor's Closing Argument

Mr. Kiir asserts the prosecutor's closing argument impermissibly urged the jury to convict him for merely possessing a firearm while committing a felony without requiring the jury to find a nexus between the possession of the gun and the commission of the felony.  See Docket No. 1 at p. 21.  He argues his counsel was ineffective for failing to object to this argument.  Id.  Mr. Kiir's argument in this regard is limited to Count 7.  Id.

This court has already concluded the jury was properly instructed as to Count 7.  The state trial court also instructed the jury it must follow the law set forth in the instructions and could not disregard any instruction.  State v. Kiir, CR 15-3221 at p. 119 (Instruction 33).  The court instructed the jury they must base their decision only on evidence received in the trial and not from any other source.  Id. at p. 76 (Preliminary Instruction 2).  Finally, the state trial court instructed the jury that argument and statements by the attorneys are not evidence.  Id. at p. 77 (Preliminary Instruction 3).

The jury was instructed to base its decision on the evidence and not on the arguments of lawyers.  Id. at pp. 76-77.  There was sufficient evidence to convict Mr. Kiir on Count 7.  The court fails to see how Mr. Kiir can demonstrate prejudice even if it was deficient performance for trial counsel not to object to the prosecutor's closing argument.

The prosecutor argued the following at close of trial with regard to

Counts 6 and 7:

> Count 6 and 7 are the offenses of commission of a felony while armed with a firearm.  I would submit to you there is no rational reasonable doubt that Mr. Kiir possessed that black-handled, silver-railed Smith & Wesson 40-caliber handgun.  It was found right underneath where his body was fighting with the officer.  And that he was armed with that firearm while he committed the offense of simple assault both by recklessly causing injury and by attempting to cause injury to Officer Vanderhule; and that he also possessed that weapon while he possessed the controlled substance.

> Not only does all of that evidence point to his guilt on these counts, but when he was told by Officer Dunn that he was being charged with a number of these offenses based on the possession of the firearm, his response was not "What firearm?" or "That's not my firearm."  It was, "Okay."  He did not appear surprised by being told he was being charged with those offenses at all.

> His reaction is further evidence that he was absolutely guilty of Counts 6 and 7.

Id. at 283-84 (Vol. II JT at pp. 48-49).

The state habeas court agreed with Mr. Kiir that, if the prosecutor had

argued that mere possession of a firearm without more was sufficient to convict

on Count 7, the prosecutor's argument would have been a misstatement of the

law and thus objectionable.  Kiir, Civ. 18-163 at pp. 372-73.  However, reading

the entirety of the prosecutor's closing argument, the state habeas court

concluded that was *not* what the attorney was arguing.  Id.  For example. the

court noted the prosecutor argued about Mr. Kiir reaching for his waistband

during the struggle with Officer Vanderhule.  Id. at p. 373 (see State v. Kiir, CR

15-3221 at pp. 280-81 (Vol. II JT at pp. 45-46) ("This was not a man reaching

for the gun underneath his body in order to turn it over to the officer. . . .  He

40

was reaching for it to use it. . . .  [H]e's attempting to grab for that weapon . . . to either cause or attempt to cause bodily injury to Officer Vanderhule with that firearm.")).

The state habeas court also noted that <u>Strickland</u> deference is especially important when an ineffective assistance claim is based on a failure to object in closing argument because there is a particularly broad range of legitimate tactical defense strategy at that stage of the trial.  <u>Id.</u> (citing <u>Yarborough v. Gentry</u>, 540 U.S. 1, 5-6 (2003) (*per curiam*)).

In the <u>Yarborough</u> decision, defense counsel argued some points in favor of the defendant at closing, but did not discuss other potentially exculpatory pieces of evidence.  <u>Yarborough</u>, 540 U.S. at 2-3.  The Court agreed that the Sixth Amendment right to effective assistance of counsel applied at the closing argument stage of a trial, but held that "[w]hen counsel focuses on some issues to the exclusion of others, there is a strong presumption that he did so for tactical reasons rather than through sheer neglect."  <u>Id.</u> at 8.  Closing argument falls into the "core exercise of defense counsel's discretion."  <u>Id.</u>  The Court held the petitioner had failed to rebut the presumption of counsel's competent performance.  <u>Id.</u> at 9.

Alternately, the state habeas court observed that *had* counsel objected to the prosecutor's closing argument, that objection would have been overruled because the argument was not objectionable.  <u>Kiir</u>, Civ. 18-163 at p. 374. Therefore, the court reasoned, Mr. Kiir was unable to demonstrate prejudice.  <u>Id.</u>

41

Here, the state habeas court applied the relevant federal law reasonably and its factual findings enjoy reasonable support in the record of the trial. The court rejects Mr. Kiir's claim of ineffective assistance of counsel as to failure to object to the prosecutor's closing argument and recommends dismissal with prejudice of the same.

### 5.    Counsel's Failure to Argue for Acquittal on Count 6 & 7

Mr. Kiir's last ineffective assistance claim asserted in Ground Two of his federal petition is that counsel failed to argue for acquittal on Counts 6 and 7 and failed to have knowledge of the essential elements of those counts. See Docket No. 1 at p. 25. As discussed immediately above, because the direct appeal on Count 6 was decided in Mr. Kiir's favor, he cannot show Strickland prejudice.

As to Count 7, Mr. Kiir bases his assertion that counsel did not know the elements of SDCL § 22-14-12 on a stray comment by counsel during the settlement of instructions. Counsel was discussing the instructions for Counts 6 and 7, suggesting that the instructions state explicitly what the predicate felony was for each count. State v. Kiir, CR 15-3221 at p. 245 (Vol. II JT at p. 10). In making her argument, counsel referred to the defendant's "possession" of a firearm. Id. (p. 10, line 16). Since mere possession of a firearm is insufficient under SDCL § 22-14-12 as held in Cook, discussed *supra*, Mr. Kiir asserts counsel was mistaken in believing that mere possession was enough to meet the "armed" element of SDCL § 22-14-12.

42

The state habeas court rejected this claim, holding that Mr. Kiir placed too much weight on an out-of-context statement. Kiir, Civ. 18-163 at p. 375. The court noted counsel was *not* discussing the essential elements of the crime charged in Count 7, but rather was suggesting that for the element of "commission of a felony" the instruction should specify *which* felony the prosecution was relying on since Mr. Kiir stood charged with multiple counts which would all be presented to the jury. Id.

The state habeas court also noted the jury was properly instructed as to Count 7, that counsel was present when that instruction was read to the jury, and that counsel had argued to the jury that Mr. Kiir did not possess the firearm and did not use it or attempt to use it in the struggle with Officer Vanderhule, thus demonstrating counsel knew that mere possession was not sufficient to show a violation of SDCL § 22-14-12. Id. The court relied on the strong presumption that counsel was competent and held that Mr. Kiir failed to establish that counsel did not know the essential elements of the crime. Id. Alternatively, since the jury was properly instructed, the state habeas court held Mr. Kiir could not demonstrate Strickland prejudice even if counsel did not know the essential elements of the crime. Id. at pp. 375-76.

The second part of Mr. Kiir's claim concerns counsel's closing argument on his behalf. Mr. Kiir acknowledges that his trial counsel made an explicit argument about the firearm in connection with Count 1 (aggravated assault) and that the jury could logically have applied that argument to Counts 6 and 7—but he argues the jury would have done so *only if counsel had directed the*

43

*jury to do so.* Docket No. 1 at p. 30. Mr. Kiir asserts that his Sixth

Amendment right to effective assistance of counsel is violated if counsel did not

ask the jury explicitly to acquit him on each and every count of the indictment.

See Docket No. 1 at p. 26. Because counsel did not explicitly ask the jury to

acquit him on Count 7, he alleges this violated his right to effective

representation. Id.

> Trial counsel's argument on Count 1 was as follows:
>
> But on the aggravated assault, there's a block that is missing. And that block that is missing is that Diw Kiir did not cause or attempt to cause injury with a weapon. There was an injury to Officer Vanderhule. That's uncontested. He talked to you about the webbing on his hand that got injured as a result of trying to hold those cuffs together. But Diw Kiir did never use a weapon.
>
> Officer Vanderhule testified several times during my cross-examination he didn't see it when he approached him. He didn't see it during the struggle. He never threatened him. He never said he had a weapon. There was no weapon that was ever used, brandished, or talked about during this entire struggle.
>
> That building block is missing. He didn't use the weapon to cause an injury. So for that aggravated assault, [the prosecutor] has missed one block. I am asking that you find Diw Kiir not guilty of that aggravated assault against a law enforcement officer.

State v. Kiir, CR 15-3221 at pp. 289-90 (Vol. II JT at pp. 54-55).

In addition, counsel pointed out that the officer who found the firearm

could not say whether the firearm was present in the area before the struggle.

Id. at p. 456 (Vol. I JT at p. 149). Counsel also pointed out the fact that the

prosecution did not introduce evidence that Mr. Kiir's fingerprints or DNA was

present on the weapon. Id. at pp. 487-88, 291-92 (Vol. I JT at pp. 180-81; Vol.

II JT at pp. 56-57).

Given the above evidence and argument given by counsel on Mr. Kiir's behalf, the state habeas court concluded his Sixth Amendment right to effective assistance had not been violated by counsel's closing argument. <u>Kiir</u>, Civ. 18-163 at p. 376-77. Nor could Mr. Kiir demonstrate prejudice as a result of counsel's allegedly deficient performance at closing. <u>Id.</u> at pp. 377-78. The state habeas court noted counsel's argument might have been stronger if she had specifically argued for acquittal on Count 7, but also noted no closing argument is perfect. <u>Id.</u> at p. 377. Counsel's closing argument contained statements which, if applied by the jury to Count 7, met the reasonable standard of competency. <u>Id.</u> The court also noted Mr. Kiir faced 10 counts and if counsel expressly addressed each count using much of the same evidence and argument (because the evidence overlapped to a large degree among counts), it may have been repetitive and put the jury to sleep. <u>Id.</u>

The state habeas court reasonably applied federal constitutional law on this issue, discussing the <u>Yarborough</u> case, *supra.* In that case, the defendant made the same argument put forward by Mr. Kiir here: that counsel should have explicitly asked the jury to acquit him. <u>Yarborough</u>, 540 U.S. at 10. The Court rejected this argument, relying on the strong presumption of competence by counsel and the wide tactical latitude attending the making of a closing argument in a criminal case. <u>Id.</u> The Court also noted that "[s]cientific research indicates that jurors will react against a lawyer who they think is blatantly trying to limit their freedom of thought" by telling the jury what

45

verdit to return.  Id. (quoting J. Stein, Closing Argument § 206, p. 15 (1992-1996)).

Regarding Mr. Kiir's argument that counsel should have argued explicitly for acquittal on Count 6, the court finds he fails to establish Strickland prejudice for this claim.  As discussed above, the South Dakota Supreme Court agreed with his argument as to Count 6 in his direct appeal, so any error by counsel did not prejudice Mr. Kiir.

The court concludes the state habeas court reasonably applied federal law and reasonably found facts based on the evidence.  Accordingly, this court recommends respondents' motion to dismiss this portion of Mr. Kiir's ineffective assistance claim be granted.

**E.     Sixth Amendment Right to Confront and Cross-Examine Witnesses**

Mr. Kiir alleges his confrontation rights guaranteed by the Sixth Amendment were violated.  Docket No. 1 at p. 32.  He alleges Officer Vanderhule's hearsay testimony reiterating what the complaining witnesses had said to him about the incident with the African-American man in the white T-shirt and red cap violated his confrontation rights.  Id. at pp. 37-38.  He alleges this was improper *res gestae* evidence, it was largely untrue, it constituted improper bad character evidence, and it prejudiced him.  Id.  This issue was raised in Mr. Kiir's direct appeal (though not in his state habeas petitions), so it is exhausted.  See Kiir, 900 N.W.2d at 295.

46

### 1.    The Law Applicable to Confrontation Clause Claims

The United States Supreme Court interpreted the Confrontation Clause in Crawford v. Washington, 541 U.S. 36 (2004), holding that "[t]estimonial statements of witnesses absent from trial [are] admi[ssible] only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine." Crawford, 541 U.S. at 59.

The facts of Crawford were as follows.  Petitioner Michael Crawford stabbed a man who allegedly attempted to rape his wife, Sylvia Crawford.  Id. at 38.  At trial, Mrs. Crawford did not testify because of the state marital privilege, thereby making her an unavailable witness.  Id. at 40.  Under state law, a spouse's out-of-court statements were admissible under a hearsay exception.  Id.  Thus, the state sought to introduce into evidence out-of-court, tape-recorded statements Mrs. Crawford made to the police describing the events leading up to the assault and the assault itself.  Id.  Because of Mrs. Crawford's involvement in the assault, the state relied upon the hearsay exception for statements against penal interest.  Id.

The trial court allowed Mrs. Crawford's out-of-court statements to be played to the jury, relying on the rule in Ohio v. Roberts, 448 U.S. 56 (1980).  Crawford, 541 U.S. at 40.  In Roberts, statements made by an unavailable witness against a criminal defendant were admissible at trial if the statements bore " 'adequate indicia of reliability,' " that is, statements "must either fall within a 'firmly rooted hearsay exception' or bear 'particularized guarantees of trustworthiness.' "  Id. (quoting Roberts, 448 U.S. at 66).  The trial court in

47

<u>Crawford</u> admitted Mrs. Crawford's out-of court statements on the latter

ground.  <u>Crawford</u>, 541 U.S. at 40.  Mr. Crawford objected on the grounds that

admitting these statements violated his "federal constitutional right to be

confronted with the witnesses against him."  <u>Id.</u> (internal quotations omitted).

On appeal, the Supreme Court rejected the reliability test articulated in

<u>Roberts</u>, holding that "[w]here testimonial statements are at issue, the only

indicium of reliability sufficient to satisfy constitutional demands is the one the

Constitution actually prescribes:  confrontation."  <u>Id.</u> at 68-69.  The <u>Crawford</u>

Court held "[w]here testimonial evidence is at issue, . . ., the Sixth Amendment

demands what the common law required:  unavailability and a prior

opportunity for cross-examination."  <u>Crawford</u>, 541 U.S. at 68.

A key consideration in <u>Crawford</u> is whether the out-of-court statements

are testimonial.  The constitutional protections of the Confrontation Clause

afforded to a defendant only apply when witnesses against him "bear

testimony."  <u>Id.</u> at 51.  " 'Testimony,' in turn is typically '[a] solemn declaration

or affirmation made for the purpose of establishing or proving some fact.' "  <u>Id.</u>

(quoting 2 N. Webster, An American Dictionary of the English Language

(1828)).  Although the Court in <u>Crawford</u> did not provide an exhaustive list of

statements that are deemed testimonial, it stated that "[w]hatever else the term

covers, it applies at a minimum to prior testimony at a preliminary hearing,

before a grand jury, or at a former trial; and to police interrogations."

<u>Crawford</u>, 541 U.S. at 68.  Although the Court did not comprehensively define

"testimonial," it stated that evidence is testimonial when "made under

circumstances which would lead an objective witness reasonably to believe that the statements would be available for use at a later trial." Id. at 52.

The Supreme Court again interpreted the confrontation clause in Davis v. Washington, in the context of a victim's 911 call to police during the midst of a domestic battery. Davis v. Washington, 547 U.S. 813, 817 (2006). The Davis Court held as follows:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later prosecution.

Id. at 822.

The Davis Court made clear that most testimonial statements will involve formal statements, like sworn testimony in a prior judicial proceeding or formal deposition under oath. Id. at 825-26. The Court also stated that some statements are "clearly nontestimonial," like statements made unwittingly to a government informant or statements from one prisoner to another. Id. at 825. See also United States v. Watson, 525 F.3d 583, 589 (7th Cir. 2008) (holding that statements made unwittingly to a confidential informant and recorded by the government are not "testimonial") (citing United States v. Underwood, 446 F.3d 1340, 1347-48 (11th Cir. 2006); United States v. Hendricks, 395 F.3d 173, 182-84 (3d Cir. 2005); United States v. Saget, 377 F.3d 223, 229-30 (2d Cir. 2004)).

The <u>Davis</u> Court also distinguished between interrogations "solely directed at establishing the facts of a past crime, in order to identify (or provide evidence to convict) the perpetrator" and interrogations intended to "describe current circumstances requiring police assistance." <u>Davis</u>, 547 U.S. at 826-27. The former were characterized by the Court as "testimonial," while the latter were characterized as "nontestimonial." <u>Id.</u>

Comparing the statement of Crawford's wife in <u>Crawford</u> with the 911 caller in <u>Davis</u>, the Court distinguished them on three grounds:  (1) the <u>Crawford</u> statement was describing past events some hours after the events had occurred while the <u>Davis</u> statement was describing events as they were actually happening; (2) the declarant in <u>Davis</u> was facing an ongoing emergency for which help was being sought and the wife in <u>Crawford</u> was not; and (3) the nature of what was asked and answered during the statement in <u>Davis</u> made clear that the elicited statements were necessary to resolve the present emergency, whereas the questions in <u>Crawford</u> were asked to learn what had happened in the past.  <u>Id.</u> at 827.

In <u>Hammon v. Indiana</u>, 547 U.S. 813 (2006), decided along with the <u>Davis</u> decision, police came to a home after receiving a call about a disturbance.  Amy Hammon was outside on the porch, somewhat frightened, but telling the officers that nothing had happened.  <u>Id.</u> at 819.  She gave permission to the officers to enter the home, where they observed a gas heating unit with the glass front shattered and on the floor and flames emitting from the front.  <u>Id.</u>  One officer remained in the kitchen with Hershel Hammon, while

another talked to Amy in the living room.  Id.  Hershel kept trying to participate in Amy's conversation in the other room and became angry at police for keeping him separated from Amy.  Id. at 820.  Amy told the officer that Hershel had broken the furnace front, shoved Amy down on the floor into the broken glass, hit her in the chest, threw her down, broke lamps and a phone, attacked Amy's daughter, and tore up Amy's van so that she could not leave.  Id.  Amy then signed an affidavit attesting to these facts, which affidavit was introduced at Hershel's trial.  Id.

The Court held that Amy's statements were testimonial and, therefore, barred by Crawford.  Id. at 829-30.  The Court contrasted Amy's statements made after the events she was describing were over, with the victim's statements in Davis which were made contemporaneous with the assault as it was occurring.  Id.

In Michigan v. Bryant, 562 U.S. 344 (2011), the Supreme Court further defined what type of "ongoing emergency" discussed in Davis would render a statement to be nontestimonial.  In that case, the victim drove to the home of Richard Bryant and Bryant had conversation with the victim through a door.  Id. at 349-50.  When the victim turned to leave, Bryant shot the victim in the abdomen through that door.  Id.  The victim drove himself in his car to a gas station where police were called.  Id.  Upon arrival at the station, police asked the victim what had happened.  Id.  The victim related the above facts, adding that he recognized Bryant's voice.  Id.  The victim died a short time after

51

speaking to police and his hearsay statements were introduced at Bryant's trial. Id. at 350-51.

The Court reiterated the rule in Davis that statements made to police pursuant to police interrogation are nontestimonial if those statements, objectively evaluated, can be said to have been made for the primary purpose of aiding the police in responding to an ongoing emergency. Id. at 354-55. Statements for the purpose of aiding police in addressing an ongoing emergency are statements focused on "end[ing] a threatening situation." Id. at 356-57. The implicit rationale for the ongoing emergency exception to the confrontation clause is "the idea that because the prospect of fabrication in statements given for the primary purpose of resolving that emergency is presumably significantly diminished, the Confrontation Clause does not require such statements to be subject to the crucible of cross-examination." Id. at 361. The Court noted that this logic is similar to the rationale underlying the excited utterance exception to the rule against hearsay. Id.

In determining whether the threat has been neutralized, the Court explained that one must consider whether the perpetrator is still at large and the type of weapon involved. Id. at 361-64. The Court also indicated that the victim's medical state should be taken into consideration. Id. In addition, the Court noted that whether there is an ongoing emergency is but one factor of many that should be considered when determining what the "primary purpose" of police interrogation is. Id. Courts should also consider the formality or informality of the encounter between the victim/declarant and the police. Id.

The Court emphasized that, in determining the primary purpose of police interrogation, courts should consider all relevant circumstances, including the motives of both the police and the victim/declarant.  Id.  Relying on the facts that the situation here involved the use of a firearm, that the location of the shooter was unknown at the time of the declaration, and that the motive for the shooting was unknown, the Court concluded that the victim's statements were nontestimonial because the interrogation was for the primary purpose of ending the ongoing threat posed by an armed shooter on the loose.  Id. at 371-78.

### 2.    The South Dakota Supreme Court's Decision

The court held, citing Crawford, that when "testimonial statements [are used] for purposes other than establishing the truth of the matter asserted," the Confrontation Clause does not bar their admission.  Kiir, 900 N.W.2d at 295.  The state court held that if a testimonial statement is not offered to prove the truth of the matter asserted, the Confrontation Clause is satisfied if the defendant has the opportunity to cross-examine the witness who is repeating the hearsay statement.  Id.  The court further stated that "the res gestae rule 'permits the admission of evidence that is "so blended or connected" in that it "explains the circumstances; or tends logically to prove any element of the crime charged." ' "  Id. (quoting State v. Wright, 768 N.W.2d 512, 531 (S.D. 2009) (quoting State v. Owen, 729 N.W.2d 356, 363 (S.D. 2007))).

Applying this rule the court held the admission of the statements in Mr. Kiir's trial was not an abuse of discretion.  Id. at 296.  The court

determined the hearsay was not offered for the truth of the matter asserted and Officer Vanderhule, who repeated the hearsay in his testimony, was available for cross-examination.  Id.  Furthermore, the court reasoned that the "statements were inextricably intertwined with the charged crime so as to constitute res gestae evidence."  Id.  Finally, the court noted the hearsay served to explain why Officer Vanderhule was at the apartment complex, why he engaged Mr. Kiir in conversation, and why the officer exercised heightened caution during his interaction with Mr. Kiir.  Id.

### 3.    Analysis of the State Court's Decision Under § 2254

The Crawford decision announced a new constitutional rule.  Crawford, 541 U.S. at 75-76 (Rehnquist, C.J., concurring in the judgment).  It jettisoned the old Roberts rule which had held that if hearsay fit within a well-recognized exception to the rule against hearsay, its admission would not offend the Confrontation Clause.  Id. at 68-69.  The Crawford Court rejected that rule as unfounded in the text of the Constitution.  Id.  Instead, the Court held that hearsay statements should be evaluated to see if they are testimonial or nontestimonial.  Id. at 51.  If they are nontestimonial, they can be freely admitted at trial without offending the Confrontation Clause.  Id. at 68.  If they are testimonial, it matters not if they fit within a well-recognized exception to the rule against hearsay—they are simply not admissible under the Confrontation Clause (unless witnesses are unavailable and defendants had a prior opportunity to cross-examine them).  Id. at 68-69.

Key to the Crawford analysis is a finding that the statement was hearsay because nonhearsay does not implicate the Confrontation Clause. Crawford, 541 U.S. at 59 n.9. Hearsay is defined in two parts: it is (1) a statement that the declarant made outside of court (2) that is offered in evidence to prove the truth of the matter asserted in the statement. See SDCL § 19-19-801(c); FED. R. EVID. 801(c). If a statement is not offered to prove the truth of the matter asserted, it is not hearsay. Tennessee v. Street, 471 U.S. 409, 413 (1985). Accordingly, when an out-of-court statement is offered in evidence, but it is *not* offered to prove the truth of the matter asserted in the statement, it is not hearsay and its admission does not offend the Confrontation Clause so long as the witness who testifies to the out-of-court statement is him/herself available to be cross-examined. Id.

Here, the South Dakota Supreme Court's analysis tracks the above analysis. The court held the statements of the witnesses was not offered to prove the truth of the matter asserted—i.e., that Mr. Kiir had in fact pointed a gun at them—but rather to simply provide context for why Officer Vanderhule singled out Mr. Kiir to approach and question and to inform why Officer Vanderhule believed Mr. Kiir to possibly be armed. Kiir, 900 N.W.2d at 296. Accordingly, the state court's analysis is a reasonable application of the federal law found in footnote nine of the Crawford opinion.

There is some tension between the *dicta* in footnote nine of the Crawford decision and the text of that opinion. First, this court notes the statement in footnote nine *was dicta*: the out-of-court statement introduced into evidence in

<u>Crawford</u> was offered for the truth of the matter asserted.  <u>Crawford</u>, 541 U.S. at 39-40.  Therefore, it was hearsay.  Any statement by the <u>Crawford</u> Court about how nonhearsay should be analyzed is therefore *dicta*.

Moreover, the new test adopted in <u>Crawford</u> has as its core the distinction between testimonial and nontestimonial statements.  The <u>Crawford</u> Court did away with the old evidence-rules-based analysis of <u>Roberts</u>.  <u>Id.</u> at 60-65.  There is nothing in the articulation of the new rule by the <u>Crawford</u> Court that directs courts to first analyze whether the statement is hearsay or nonhearsay before asking whether the statement is testimonial or nontestimonial.  <u>Id.</u> at 68-69.

Also, key to the Court's decision in <u>Street</u>, cited by the <u>Crawford</u> Court in footnote nine, was the fact that the jury was given a limiting instruction telling them it could not consider the out-of-court statement introduced in that case for the truth of the matter asserted.  <u>Street</u>, 471 U.S. at 414-15.  Here, the state trial court gave a preliminary instruction that some evidence might be admitted for a limited purpose and, if that were to occur, the jury must use that evidence only for the purposes for which the court admitted it.  <u>See</u> <u>State v. Kiir</u>, CR 15-3221 at p. 77 (Instruction 3).  No special limiting instruction was given at the close of the trial.  <u>Id.</u> at pp. 85-127.  No special limiting instruction was given at the time the out-of-court statements were introduced into evidence.  <u>Id.</u> at pp. 408-09, 411, 426-27 (Vol. I JT at pp. 101-02, 104, 119-20).  Without the limiting instruction, there is the very real possibility the jury used the out-of-court statement as evidence of the truth of the matter asserted.

The foundation upon which the South Dakota Supreme Court's decision rested—a finding that the statement was not offered for the truth of the matter asserted—does not find reasonable support in the record.  The contested evidence came in without any limiting instruction by the court.

Nevertheless, this court does not recommend granting Mr. Kiir habeas relief.  That is because, had the South Dakota Supreme Court applied the Crawford analysis to the out-of-court statement, the same result would have obtained.  It is clear under Davis, Hammond, and Bryant that the statements of the victims in Mr. Kiir's case were nontestimonial because they were given for the primary purpose of enabling police to assist them in an ongoing emergency.  Davis, 547 U.S. at 822.  The witnesses had been assaulted by having a gun pointed at them.  The suspect was still at large with a dangerous weapon in his possession.  The victims were telling Officer Vanderhule their story not so their testimony could be used later in a court proceeding, but to ensure theirs and others' safety from Mr. Kiir.  Police had not apprehended or restrained Mr. Kiir at the time.  Under the appropriate analysis of applicable federal Confrontation Clause law, the same result obtains:  the victims' statements were nontestimonial and, thus, the Confrontation Clause was not violated when their hearsay statements were introduced at Mr. Kiir's trial.  Bryant, 562 U.S. at 361-64 (statement was nontestimonial and therefore admissible under Confrontation Clause where threat had not been neutralized, perpetrator was still at large, perpetrator was unknown, perpetrator's motive was unknown, and weapon was very dangerous); Davis, 547 U.S. at 827

57

(statement was nontestimonial and therefore admissible under Confrontation Clause where assault was an ongoing emergency and statements made were intended to help resolve the emergency). This court recommends granting respondents' motion to dismiss Mr. Kiir's third ground for habeas relief under the Confrontation Clause.

## CONCLUSION

Based on the foregoing facts, law and analysis, this magistrate judge respectfully recommends granting respondents' motion to dismiss [Docket No. 10], denying Mr. Kiir's motion to quash [Docket No. 15] and dismissing Mr. Kiir's petition with prejudice.

## NOTICE TO PARTIES

The parties have fourteen (14) days after service of this report and recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained. Failure to file timely objections will result in the waiver of the right to appeal questions of fact. Objections must be timely and specific in order to require de novo review by the district court. Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED July 28, 2021.

BY THE COURT:

VERONICA L. DUFFY
United States Magistrate Judge